UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARTIN HURTADO,

    Petitioner,

    v.       CAUSE NO.: 3:24-CV-951-HAB-SLC

WARDEN,

    Respondent.

## OPINION AND ORDER

Martin Hurtado, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Miami Correctional Facility (MCF 24-04-001771) in which he was found guilty of violating Indiana Department of Correction (IDOC) Disciplinary Offense A-117, "Battery Against a Staff Person, Volunteer, Visitor, or Contractor." (ECF 1.) For the reasons stated below, the petition is denied.

## BACKGROUND

The charge was initiated on April 29, 2024, when Sergeant D. Upchurch wrote a conduct report stating as follows:

> On 04/29/2024 at approximately 6:05 A.M., I Sergeant D. Upchurch was walking to Hotel Housing Unit (HHU) when I observed incarcerated individual (I/I) Hurtado, Martin #260841, JHU-208 standing in front of Gulf Housing Unit (GHU) with another incarcerated individual out of place. I advised incarcerated individual Hurtado that I was going to conduct a pat search. I noticed a phone in his hand and I asked for it. He threw it and it hit me in the head. It then dropped to the ground where he retrieved it and started running. A signal 10 was called and QRT as well as other officers responded.

(ECF 10-1).

On May 9, 2024, Hurtado was formally notified of the charge and given a copy of the conduct report. (ECF 10-2 at 1; ECF 10-1.) He pled not guilty and requested a lay advocate, and one was appointed for him. (ECF 10-2; ECF 10-3.) He requested statements from Sergeant L. Devine and Case Worker J. Mayes to answer the question, "Do you believe I would ever intentionally assault a staff person?" (ECF 10-2.) He also requested a witness statement from fellow inmate McCullough (first name unknown), who appears to have been in the area at the time of this incident. (*Id.*) Statements were obtained from these individuals. Sergeant Devine stated: "What I believe is irrelevant to the evidence to this situation." (ECF 10-11 at 1.) Case Worker Mayes stated: "Yes, I believe that under the circumstances Mr. Hurtado would assault a staff person." (*Id.* at 2). Inmate McCullough stated: "Mr. Hurtado threw the [device], or phone, up into the air. There is no intended target that Mr. Hurtado could have had. I see no intention whatsoever to have thrown the phone at DOC guard Upchurch." (ECF 10-10.)

After the screening was completed, Hurtado sent written requests for additional evidence. He asked for "camera footage" of the incident with Sergeant Upchurch and for body camera footage from the officer who gathered the statements from Sergeant Devine and Case Worker Mayes. (ECF 10-2 at 2; ECF 10-4.) A few days later, he asked for pictures of Sergeant Upchurch's injuries and any available medical records. (ECF 10-4.) He also asked to be given a copy of the screening reports in two of his other disciplinary cases, MCF 24-04-001767 and MCF 24-04-001770. (*Id.* at 2.)

Copies of the screening reports were sent to him pursuant to his request. (ECF 10-4 at 4.) The request for body camera footage of the officer who gathered statements

2

from Sergeant Devine and Case Worker Mayes was denied as irrelevant to the underlying charge. (ECF 10-6.) The hearing officer attempted to obtain camera footage depicting the interaction between Hurtado and Sergeant Upchurch but determined that it was not viewable on the camera.[1] (ECF 10-7.) A photograph of Sergeant Upchurch and an injury report pertaining to this incident were obtained and placed in the file, but for security reasons Hurtado was not permitted to see them. (ECF 10-5; ECF 11-13.)

On May 29, 2024, a hearing was held on the charge. (ECF 10-8.) Hurtado submitted a detailed three-page statement in his defense. (ECF 10-9.) He admitted that he had thrown the phone in an effort to get rid of it, but claimed he "didn't aim" at Sergeant Upchurch and did not intend to hit her. (*Id.*) The hearing officer considered this statement, along with the other evidence, and found Hurtado guilty. (ECF 10-8.) He was sanctioned with the loss of 180 days earned credit time and temporary placement in restrictive housing. (*Id.*)

## ANALYSIS

When prisoners lose earned credit time in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to have their case decided by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of the evidence

---

[1] It appears from the record that the hearing officer looked for viewable camera evidence two different times. (*See* ECF 10-7 at 1-2.)

3

relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Hurtado asserts the following claims in his petition: (1) "Violation of constitutional right to due process guaranteed by 14th Amendment/insufficient evidence"; (2) "Violation of I.D.O.C. policy and procedure of 02-04-101"; and (3) "Excessive Sanctions."[2] (ECF 1- at 2-3.) The Respondent argues that these claims fail on the merits.[3] (ECF 10.) Hurtado has filed a traverse in support of his petition. (ECF 15.)

In his first claim, the court understands Hurtado to be claiming he was denied exculpatory evidence. Inmates have a right to request and present evidence when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564. However, the right only extends to evidence that is exculpatory. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996).

---

[2] Hurtado refers to outside documents to explain the basis of his claims, which is not permissible. *See* Rule 2(c)(1) of the Rules Governing Section 2254 Cases ("The petition must . . . specify all the grounds for relief available to the petitioner[.]"). In light of his pro se status, the court has attempted to give his filings liberal construction and to discern within them his grounds for federal habeas relief.

[3] Hurtado raises an argument about exhaustion in his traverse, but there is no need for the court to consider it because the Respondent does not argue lack of exhaustion. (*See* ECF 10; ECF 15 at 1.)

Prior to the hearing, Hurtado requested several pieces of evidence: witness statements, camera footage of the incident with Sergeant Upchurch, body camera footage from the officer who gathered witness statements from Sergeant Devine and Case Worker Mayes, and pictures of Sergeant Upchurch's injuries and available medical records.[4] (ECF 10-4 at 1.)

The record reveals no due process errors in connection with this evidence. The witness statements were obtained as requested. The hearing officer attempted to obtain video footage of the incident, but determined that the incident was not viewable. (ECF 10-7 at 1.) Hurtado finds this suspect, stating that there was a "soft ball sized camera" in the area. (ECF 15-1 at 2.) However, there is nothing in the record to suggest that video evidence existed of this incident that was hidden from him. He may wish that the incident was caught on camera, but due process does not entitle him to the creation of evidence that does not exist. *Wolff*, 418 U.S. at 556.

Hurtado points to records indicating that there was video evidence related to a different disciplinary proceeding stemming from this same incident. (*See* ECF 15-1 at 3.) The records he points to reflect that after his interaction with Sergeant Upchurch, he was seen by another officer several minutes later running through the yard with a cell phone in his hand, which he then threw to the ground several times and smashed. (ECF 1-1 at 23-24.) He was charged with possessing a cell phone as a result of this incident. (*Id.* at 23.) The court notes that this other officer's account further collaborates Sergeant

---

[4] He appears to have requested the screening reports in his other disciplinary cases merely for his own personal use. The record reflects that those reports were provided to him. (*See* ECF 10-4 at 4.)

5

Upchurch's account, which is that after the cell phone hit her in the head, Hurtado picked it up and began running. (*See* ECF 10-1.) Furthermore, the record reflects that the incident with the other officer occurred in a different area of the yard several minutes *after* his interaction with Sergeant Upchurch. (*Id.* at 23-24.) Contrary to Hurtado's suggestion, there is nothing in these records to reflect that the hearing officer lied about whether the incident with Sergeant Upchurch was viewable.

Hurtado also suggests that the hearing officer should have written a more detailed account of why the incident was not viewable. (ECF 15-1 at 3.) That may be, but this is not a right enumerated in *Wolff*, and the court is not permitted to expand upon those rights. *White*, 266 F.3d at 768; *see also Davis v. Superintendent*, No. 3:16-CV-609-RLM, 2017 WL 2533662, at *3 (N.D. Ind. June 12, 2017). If he is relying on prison policy in making this argument, a violation of prison policy does not provide a basis for granting him federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008).

Hurtado's request for body camera footage from the officer who gathered statements from Sergeant Devine and Case Worker Mayes was reasonably denied as irrelevant. Neither Sergeant Devine and Case Worker Mayes witnessed the underlying event, and instead Hurtado wanted them to serve as character witnesses. They were not particularly helpful to his defense, as Sergeant Devine stated that he had no relevant information, and Case Worker Mayes expressed the view that Hurtado would assault a staff member. (ECF 10-11.) Hurtado asserts in his traverse that Case Worker Mayes first wrote a statement indicating that she did not think he would assault a staff member, but

6

the officer who took her statement "forced her to rewrite it." (ECF 15-1 at 1-2.) He offers no evidence in support of this assertion. In any event, a non-witness's opinion about Hurtado's predisposition for assaulting a staff member would not have directly undercut the evidence that he hit Sergeant Upchurch in the head with a phone. *See Meeks*, 81 F.3d at 721. The exclusion of this evidence did not violate his rights.

Hurtado was not permitted to see the photo of Sergeant Upchurch or the injury report, although these documents were obtained and considered by the hearing officer. Under the Due Process Clause, inmates have a right to request evidence but not necessarily to personally review it. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). That is because "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *Id.* This evidence has been submitted to the court under seal along with a motion to maintain the evidence under seal for security reasons.. (ECF 11-13.)

Upon review of the Respondent's motion (ECF 11), the court concludes that it could compromise prison security to disclose this evidence to Hurtado. *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Furthermore, there is nothing exculpatory in these records. The photograph is neither inculpatory nor exculpatory, as it merely depicts the back of Sergeant Upchurch's head. Only her hair is visible, and it cannot be discerned whether she suffered any injury to her scalp as a result of this incident. The injury report is inculpatory, as it reflects that Sergeant Upchurch had a "bump" on her head after this incident. Hurtado has not established a due process violation on this ground.

Within this claim, the court understands Hurtado to be challenging the sufficiency of the evidence. In a disciplinary proceeding, evidence will satisfy due process if it passes the "some evidence" test. *Hill*, 472 U.S. at 455. This "is a lenient standard, requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). "Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* A conduct report alone can be sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *Meeks*, 81 F.3d at 721. It is not the province of a federal court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652. Rather, the question is whether there is some evidence to support the hearing officer's determination. *Id.*

Hurtado was found guilty of "Battery Against a Staff Person, Volunteer, Visitor, or Contractor." (ECF 10-15 at 3.) Battery, in turn, is defined as "[k]nowingly or intentionally touching another person in a rude, insolent or angry manner[.]"[5] (ECF 14-11 at 3.) Sergeant Upchurch's account provides sufficient evidence that Hurtado violated this rule. Specifically, she stated that as she was carrying out her duties, she discovered Hurtado with a cell phone in his hand. She told him to give her the phone,

---

[5] "Rude" and "insolent" are not defined by the disciplinary code, but Webster's Dictionary defines rude as "offensive in manner or action" or "discourteous." WEBSTER'S DICTIONARY, *Rude.* https://www.merriam-webster.com/dictionary/rude. Certainly hitting someone in the head with an object qualifies as discourteous, and Hurtado does not argue otherwise.

8

but instead he threw it and hit her in the head. (ECF 10-1 at 1.) She reported having a bump on her head following this incident. (ECF 13.)

Hurtado has admitted to intentionally throwing the phone during this incident. (ECF 10-9.) He further admitted, "I honestly do not know if the phone even hit Sgt. Upchurch as I was NOT facing her." (ECF 10-17 at 3.) Sergeant Upchurch, by contrast, gave a clear account that she was hit in the head with the phone. Hurtado claims that he did not intend to hurt her, but the hearing officer was not required to credit his account. Furthermore, intent to harm is not an element of the offense under the Disciplinary Code. (ECF 10-15 at 3.) To the extent he is arguing that throwing an item does not amount to battery, such an argument is unavailing. *See Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987) (inmate who threw hot coffee on another individual was guilty of battery); *Harrison v. Superintendent*, No. 3:13-CV-099 JD, 2013 WL 5707244, at *3 (N.D. Ind. Oct. 21, 2013) (inmate who threw a liquid on a guard was guilty of battery).

Hurtado also argues there was no evidence Sergeant Upchurch suffered bruising, a concussion, or "disfiguration" as a result of being hit in the head. (ECF 1 at 3.) He is wrong about the bruising, because the incident report reflects that Sergeant Upchurch had a bruised area, or "bump," on her head after this incident. (ECF 13.) He is correct that she does not appear to have suffered a severe injury, but the Disciplinary Code does not require that the victim suffer any particular type of injury for a battery to have occurred. (ECF 10-15 at 3.) He has not established a due process violation on this ground.

9

Hurtado next alleges that prison policy was violated during the course of the disciplinary proceeding. He does not elaborate in his petition, but in his disciplinary appeal he argued that the policy was violated because Sergeant Upchurch's supervisor did not sign the conduct report. (ECF 10-17 at 3.) Even if he is correct, a violation of prison policy does not provide grounds to grant him federal habeas relief. *Estelle*, 502 U.S. at 67–68; *Keller*, 271 F. App'x at 532.

In claim three, Hurtado alleges that the sanction imposed by the hearing officer was excessive. (ECF 1 at 3.) He argues that the hearing officer failed to take account of certain "mitigating factors," specifically, that he had not committed a disciplinary infraction in five years and that Sergeant Upchurch was not seriously injured. (ECF 1 at 3.) His argument appears to be premised on a violation of IDOC policy, which provides for consideration of various mitigating and aggravating factors by the hearing officer. (ECF 10-14 at 39.) As explained above, a violation of IDOC policy does not provide a basis for this court to grant Hurtado federal habeas relief. *See Keller*, 271 F. App'x 531 (inmate's excessive sanction claim premised on violation of prison policy was not cognizable on federal habeas review).

To the extent he is alleging a constitutional violation, "[a] federal court will not normally review a state sentencing determination [that] falls within the statutory limit," because such determinations are based on an exercise of discretion. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997); *see also Perez v. Warden*, No. 3:20-CV-783-MGG, 2021 WL 2646296, at *2 (N.D. Ind. June 28, 2021) ("An excessive sanction is not a valid basis for challenging a disciplinary sanction that is within the range of the offense for which the

inmate was found guilty."). Under IDOC policy, inmates found guilty of A-level offenses (including battery) may be sanctioned with up to six months lost earned credit time and six months in restrictive housing. (ECF 10-14 at 42.) Hurtado received a sanction within that limit. (ECF 10-8.) The Eighth Amendment forbids only "extreme" punishment that is "grossly disproportionate" to the crime. *Koo*, 124 F.3d at 875. The court cannot conclude that the sanction imposed against Hurtado for hitting a staff member in the head after she attempted to obtain an item of contraband from him meets that definition. He has not established an entitlement to habeas relief on this ground.

Finally, the Respondent discerns a double jeopardy claim in the petition. (ECF 10 at 24.) The court does not read the petition to include such a claim, although Hurtado raised this claim in his administrative appeals. (ECF 10-17.) He argued that he could not be found guilty of both possessing a cell phone and battery on staff as a result of this one incident. (*Id.*) If he is trying to raise that claim here, it has no merit, because double jeopardy principles do not apply in the prison disciplinary context. *Meeks*, 81 F.3d at 722.

For these reasons, the court GRANTS the Respondent's motion to seal (ECF 11), DENIES the petition (ECF 1), and DIRECTS the clerk to close this case.

SO ORDERED on June 3, 2025.

             s/Holly A. Brady
             CHIEF JUDGE
             UNITED STATES DISTRICT COURT